UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

Case No. 22-13879-AA

———————————————

MATILDE SANTANA, an individual,

*Plaintiff-Appellant*,

v.

TELEMUNDO NETWORK GROUP, LLC,
a Delaware limited liability company,
NBC UNIVERSAL MEDIA, LLC,
a Delaware limited liability company, and
COMCAST CORPORATION,
a Pennsylvania corporation,

*Defendant-Appellees*.

———————————————————————————

On Appeal from the United States District Court
for the Middle District of Florida
Case No. 6:20-cv-01157-WWB-LRH (Hon. Wendy W. Berger)

———————————————————————————

**BRIEF OF APPELLANT, MATILDE SANTANA**

———————————————————————————

Schwartz Sladkus Reich Greenberg Atlas LLP
Jonathan Mann, Esq.
Florida Bar No. 28090
2424 N. Federal Highway, Suite 456
Boca Raton, FL 33431
Telephone: (561) 769-5600
Facsimile: (561) 769-5660
AppellatePleadings@ssrga.com
jmann@ssrga.com
*Attorneys for Appellant*

## <u>APPELLANT'S CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT</u>

**A. Certificate of Interested Persons**

1.    Berger, Hon. Wendy W.

2.    Bleau, Denise J.

3.    Bresky, Robin I.

4.    Cicale, Dominick (a/k/a Russo, Dominick)

5.    Colstar Transportation Services, Inc.

6.    Comcast Corporation (A Defendant Appellee, a Pennsylvania corporation)

7.    Cornelius, Mark A.

8.    Cuba, Sandra

9.    Dyson, Sacha

10.    GrayRobinson, P.A.

11.    Hearing, Gregory A.

12.    Irizarry, Jesus

13.    Irizarry Mendez PL

14.    Kubicki Draper

15.    Law Office of Mark A. Cornelius, P.A.

16.    Lewis, Patti

17.    Levy, Normand

18.  Mann, Jonathan T.

19.  Miller, Daniel A.

20.  NBC Universal Media, LLC (A Defendant Appellee, a Delaware limited liability company)

21.  Quintana, Marlene

22.  Rehns, Kenneth M.

23.  Ruiz, Fabian A.

24.  Santana, Matilde

25.  Sarofsky, Mahra C.

26.  Schwartz Sladkus Reich Greenberg Atlas LLP

27.  Slusher, Jeremy E.

28.  Slusher & Rosenblum, P.A.

29.  Soto, Anibal

30.  Sullivan, Kevin M.

31.  Taylor English Duma

32.  Universal Studios

33.  Quintana, Marlene

34.  Rodriguez, Heidi

35.  Rodriguez, Yvonne

36.  Roldan, Luis

37.  Telemundo Network Group, LLC (A Defendant Appellee, a Delaware limited

liability company)

38.    Ward Damon, PL

39.    Waters, F. Ryan

40.    ZGS Communications, Inc. (acquired by Telemundo Network Group, LLC in February 2008)

**B. Corporate Disclosure Statement**

Pursuant to Federal Rule of Appellate Procedure 26.1 and 11th Cir. R. 26.1-1, the undersigned certifies that the following publicly traded company or corporation has an interest in the outcome of this case or appeal:

1.    COMCAST CORPORATION, a Pennsylvania corporation – (Owner of NBC Universal and Telemundo; traded on NASDAQ under ticker symbol "CMCSA").

By:  */s/ Jonathan Mann*
        Jonathan Mann, Esq.
        Florida Bar No. 28090

**<u>Statement Regarding Oral Argument</u>**

Appellant, Matilde Santana, does not request oral argument in this appeal. Appellant respectfully suggests that the parties will adequately explain their positions to this Court in the written briefs and that oral argument will not significantly add to the Court's understanding of the case.

**<u>Statement Regarding Record References</u>**

In this Brief of Appellant, the citation "(DE [Docket Entry No.]:[Page No.])" shall refer to the entries on the Case Docket for Case No. 6:20-cv-01157-WWB-LRH in the United States District Court for the Middle District of Florida, followed by the document number and <u>pdf</u> page numbers. There are no hearing transcripts cited in this brief.

# **TABLE OF CONTENTS**

Certificate of Interested Persons ........................................................ CIP-2

Corporate Disclosure Statement ...................................................... CIP-4

Statement Regarding Oral Argument .......................................................i

Statement Regarding the Record References ............................................i

Table of Contents ........................................................................... ii

Table of Citations ........................................................................iv

Statement of Jurisdiction ...................................................................2

Statement of the Issues .......................................................................3

Statement of the Case .........................................................................4

      i.    Course of Proceedings and Disposition Below ....................................4

      ii.    Statement of the Facts ........................................................5

      iii.    Statement of the Standard of Review ...............................16

Summary of the Argument .....................................................................17

Argument ......................................................................................21

**I.    The district court erred in dismissing Ms. Santana's claims for retaliation where she clearly alleged a causal connection between the adverse employment action and her protected activity** ............... 21-25

    A. Rule 8(a)(2) does not require the level of detail to which the district court held Ms. Santana's Amended Complaint .................................. 21-22

    B. Ms. Santana clearly alleged awareness of the protected activity by her supervisors, and the causal connection between the protected activity and the adverse employment decision ............................. 22-25

**II.    The district court erred in granting summary judgment for Defendants on Ms. Santana's remaining sexual harrassment claims** ........................................................................................... 25-38

A. Summary Judgment Standard ........................................................... 25-27

B. Ms. Santana alleged severe or pervasive conduct sufficient for a jury to find that she established a hostile environment claim .................. 27-30

C. Mr. Soto and Mr. Roldan were supervisors for Title VII purposes, and even if not, Defendants are liable for negligence ....................... 30-32

D. Defendants could not successfully raise the *Ellerth/Faragher* defense ............................................................................................... 32-36

E. Ms. Santana has demonstrable front pay and back pay damages, directly related to Defendants' discriminatory actions against her ... 36-38

**III.   The district court erred in denying Ms. Santana's Rule 59 Motion To Alter Or Amend Judgment** ........................................................... 38-41

A. The district court erred in denying Ms. Santana's Rule 59 Motion To Alter Or Amend Judgment where additional witnesses came forward that would not come forward previously ............................ 38-40

B. The district court erred in denying Ms. Santana's Rule 59 Motion To Alter Or Amend Judgment where the district court committed manifest error of law in applying the incorrect standard in dismissing Ms. Santana's retaliation claims ..................................... 40-41

Conclusion .................................................................................................... 41

Certificate of Compliance ............................................................................ 42

Certificate of Service ................................................................................... 42

iii

## <u>TABLE OF CITATIONS</u>

<u>Authority</u>                                                                 <u>Page</u>

*Abbes v. Embraer Servs., Inc.*,
  195 F. Appx. 898 (11th Cir. 2006) ................................................26

*Allen v. Tyson Foods, Inc.*,
  121 F.3d 642 (11th Cir. 1997) .....................................................26

*AMTRAK v. Morgan*,
  536 U.S. 101 (2002) ...................................................................27

*Arthur v. King*,
  500 F. 3d 1335 (11th Cir. 2007) ............................................. 16-17

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ...................................................................21

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ..............................................................21, 22

*Broadcast Music, Inc. v. Evie's Tavern Ellenton, Inc.*,
  772 F. 3d 1254 (11th Cir. 2014) ................................................16

*Burlington Indus., Inc. v. Ellerth*,
  524 U.S. 742 (1998) ...................................................................30

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) ...................................................................26

*Chaparro v. Carnival Corp.*,
  693 F.3d 133 (11th Cir. 2012) ...................................................16

*Cinotto v. Delta Air Lines Inc.*,
  674 F.3d 1285 (11th Cir. 2012) .................................................16

*Clark v. Coats & Clark, Inc.*,
  929 F.2d 604 (11th Cir. 1991) ...................................................26

*Conley v. Gibson*, 355 U.S. 41 (1957) ....................................................21

*Cush-Crawford v. Adchem Corp.*,
   94 F. Supp. 2d 294 (E.D.N.Y. 2000) .............................................37

*Damon v. Fleming Supermarkets of Fla., Inc.*,
   196 F.3d 1354 (11th Cir. 1999) ....................................................26

*Feliciano v. City of Miami Beach*,
   707 F.3d 1244 (11th Cir. 2013) ....................................................27

*Ferrill v. Parker Group, Inc.*,
   168 F.3d 468 (11th Cir. 1999) ......................................................37

*Frederick v. Sprint/United Mgmt.* Co.,
   246 F. 3d 1305 (11th Cir. 2001) ...................................................35

*Greene v. Ala. Dep't of Revenue*,
   746 Fed. Appx. 929 (11th Cir. 2018) ................................... 22, 24-25

*Harris v. Forklift Sys.*,
   510 U.S. 17 (1993) .......................................................................28

*Jenkins v. Anton*,
   922 F. 3d 1257 (11th Cir. 2019) ...................................................40

*Johnson v. Governor of Fla.*,
   405 F.3d 1214 (11th Cir. 2005) ....................................................16

*Kurtts v. Chiropractic Strategies Group,, Inc.*,
   481 Fed. Appx. 462 (11th Cir. 2012) .............................................33

*Mendoza v. Borden, Inc.*,
   195 F.3d 1238 (11th Cir. 1999) ....................................................28

*Metlife Life & Annuity Co. of Conn. v. Akpele*,
   886 F.3d 998 (11th Cir. 2018) ......................................................40

*Miller v. Kenworth of Dothan Inc.*,
   277 F. 3d 1269 (11th Cir. 2002) ...................................................36

v

*Mills v. Foremost Insurance Company*,
    511 F. 3d 1300 (11th Cir. 2008) ................................................................22, 25

*Nord v. United States Steel Corp.*,
    758 F. 2d 1462 (11th Cir. 1985) ................................................................38

*Omar v. Lindsey*,
    334 F.3d 1246 (11th Cir. 2003) ................................................................21

*Oncale v. Sundowner Offshore Servs.*,
    523 U.S. 75 (1998) ................................................................28

*Oto v. Metropolitan Life Ins. Co.*,
    224 F.3d 601 (7th Cir. 2000) ................................................................40

*PBT Real Est., LLC v. Town of Palm Beach*,
    988 F. 3d 1274 (11th Cir. 2021) ................................................................38

*Reeves v. C.H. Robinson Worldwide, Inc.*,
    594 F. 3d 798 (11th Cir. 2010) ................................................................28, 30

*Sedrak v. Callahan*,
    987 F.Supp. 1063 (N.D.Ill.1997) ................................................................40

*Servillo v. Sola Medi Spa, Ltd. Liab. Co.*, 2021 U.S. Dist. LEXIS 22165,
    2021 WL 406177 (M.D. Fla. Feb. 5, 2021) ................................................................37

*Shannon v. BellSouth Telecomms., Inc.*,
    292 F. 3d 712 (11th Cir. 2002) ................................................................22

*Sinaltrainal v. Coca-Cola Co.*,
    578 F. 3d 1252 (11th Cir. 2009) ................................................................21

*Speaks v. City of Lakeland*,
    315 F. Supp. 2d 1217 (M.D. Fla. 2004) ................................................................32-33

*Stallworth v. Shuler*,
    777 F.2d 1431 (11th Cir. 1985) ................................................................37

*St. Louis Condominium Ass'n, Inc. v. Rockhill Ins. Co.,*
    5 F. 4th 1235 (11th Cir. 2021) ........................................................17

*Sumpter v. Mukasey,* 2009 WL 10664977,
    2009 U.S. Dist. LEXIS 138142 (N.D. Ga. Feb. 23, 2009) ............36

*Swindle v. Jefferson Cty. Comm'n,*
    593 F. App'x 919 (11th Cir. 2014) ...........................................34, 35

*Vance v. Ball State Univ.,*
    570 U.S. 421 (2013) ................................................................30, 31

*Walton v. Johnson & Johnson Servs.,*
    347 F.3d 1272 (11th Cir. 2003) ....................................................35

*Ward v. Casual Rest. Concepts, Inc.,*
    2012 U.S. Dist. LEXIS 26659, 2012 WL 695846
    (M.D. Fla. Mar. 1, 2012) ........................................27, 33-34, 35

*Warren v. Cty. Comm'n of Lawrence Cty.,*
    826 F. Supp. 2d 1299 (N.D. Ala. 2011) .......................................37

## Statutes

28 U.S.C. § 1291 ....................................................................................2

28 U.S.C. § 1331 ....................................................................................2

28 U.S.C. § 1332 ....................................................................................2

42 U.S.C. § 1981(a)(1) .........................................................................37

42 U.S.C. § 2000e, et seq.....................................................................2, 4

42 U.S.C. § 2000e-5 .............................................................................37

§ 760.01, Fla. Stat. .............................................................................2, 4

## Rules of Court Procedure

Federal Rule of Appellate Procedure 4(a)(4)(B)(ii)  .................................................5

Federal Rule of Appellate Procedure 32(a)(7)  ......................................................42

Federal Rule of Civil Procedure 8(a)(2)  ..........................................................17, 21

Federal Rule of Civil Procedure 9(b)  .......................................................................24

Federal Rule of Civil Procedure 12(b)(6)  ..............................................16, 21, 22

Federal Rule of Civil Procedure 59(e)  ....................................................................38

## STATEMENT OF JURISDICTION

This is an appeal of a judgment, order granting summary judgment, and order denying Rule 59 Motion, entered in favor of Defendant-Appellees in a civil action for damages under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq. ("Title VII"), and the Florida Civil Rights Act, Florida Statutes § 760.01, et seq.

This matter was originally filed in the United States District Court for the Middle District of Florida ("district court"). The district court had subject matter jurisdiction over this action due to federal question jurisdiction pursuant to 28 U.S.C. § 1331 and based upon diversity of citizenship under 28 U.S.C. § 1332.

This Court has jurisdiction of this appeal under 28 U.S.C. § 1291 as this is an appeal of a final decision of a United States District Court in a civil case. The district court rendered the Order and judgment on July 1, 2022. Appellant timely filed the Notice of Appeal on July 29, 2022. Appellant timely filed an Amended Notice of Appeal on November 15, 2022 following the district court's denial of her Rule 59 motion.

## <u>STATEMENT OF THE ISSUES</u>

**I.**      Whether the district court erred in dismissing Ms. Santana's claims for retaliation where she sufficiently alleged a causal connection between the adverse employment action and her protected activity?  **[YES].**

**II.**      Whether the district court erred in granting summary judgment for Defendants on Ms. Santana's remaining sexual harrassment claims? **[YES].**

**III**.      Whether the district court erred in denying Ms. Santana's Rule 59 Motion To Alter Or Amend Judgment where additional witnesses came forward that would not come forward previously and the district court committed manifest error of law in applying the incorrect standard in dismissing Ms. Santana's retaliation claims? **[YES].**

## STATEMENT OF THE CASE

**i.    Course of Proceedings and Disposition in the Court Below.**

On June 30, 2020, Ms. Santana filed her original Complaint in this action. (DE 1). On August 26, 2020, Defendants filed a Motion To Dismiss Plaintiff's Complaint (DE 19). On February 22, 2021, the district court issued an order granting in part and denying in part Defendants' Motion To Dismiss. (DE 29). The district court ordered that Ms. Santana file an Amended Complaint. (DE 29).

On March 1, 2021, Ms. Santana filed her Amended Complaint. (DE 31). The Amended Complaint contained four counts of sexual discrimination and retaliation. (DE 31). Ms. Santana sought damages under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq. ("Title VII"), and the Florida Civil Rights Act, Florida Statutes § 760.01, et seq. (DE 31).

On March 25, 2021, Defendants filed a Motion To Dismiss Plaintiff's Amended Complaint and Memorandum of Law in Support. (DE 35). On August 5, 2021, the district court entered its Order on Defendants' Motion To Dismiss. (DE 40). The district court granted dismissal of Ms. Santana's two claims for retaliation, which were Counts II and IV of the Amended Complaint. (DE 40:6).

On November 8, 2021, Defendants filed a Motion For Summary Judgment requesting entry of summary judgment on Plaintiff's remaining claims, for hostile environment sexual harassment. (DE 67). On November 30, 2021, Ms. Santana filed

4

a Response To Defendant's Motion For Summary Judgment. (DE 80).

On July 1, 2022, the district court entered its Order on Defendant's Motion For Summary Judgment. (DE 172). The district court granted Defendants' Motion For Summary Judgment and directed entry of a Final Judgment. (DE 172). The clerk entered judgment the same day. (DE 173).

On July 29, 2022, Ms. Santana filed a Rule 59 Motion To Alter Or Amend Judgment. (DE 177). Also on July 29, 2022, Ms. Santana filed a Notice of Appeal. (DE 178).

On November 13, 2022, the district court entered its Order in which it denied the Rule 59 Motion To Alter Or Amend Judgment. (DE 181).

On November 15, 2022, Ms. Santana filed an Amended Notice of Appeal under Federal Rule of Appellate Procedure 4(a)(4)(B)(ii). (DE 182).

ii.    **Statement of the Facts.**

   a.  **Ms. Santana experiences sexual harassment and retaliation in her employment and later files suit.**

Ms. Santana began working as an employee for Defendants' predecessor entity, ZGS Communications, sometime in or around August of 2000. (DE 80-1:1 at ¶ 3). Defendants acquired the Orlando station previously owned by ZGS Communications sometime in February of 2018 (the "Acquisition"), at which time Ms. Santana became an account executive focusing on advertising sales for

Defendants. (DE 80-1:2, at ¶¶ 4-5).

Anibal Soto was Ms. Santana's manager and direct supervisor from October 2014 and through the Acquisition until August of 2019. (DE 80-1:2, 9). As Ms. Santana's manager, Mr. Soto had the ability, with input from the general manager, to adjust budgets and transfer accounts. (DE 80-2:18-20). Mr. Soto further evaluated the performance of the sales team, including Ms. Santana, which was based in part on the budget set for the team member. (DE 80-2:24-26).

Within days of Mr. Soto being hired as Ms. Santana's manager, he began to sexually harass her, making sexual comments, suggestions, and actions directed at her and around her regarding other women, which made Ms. Santana uncomfortable working in the office. (DE 80-1:2-10). Mr. Soto also made excuses to inappropriately touch and otherwise physically contact Ms. Santana, often accompanied by sexual suggestions. (DE 80-1:6-10). Mr. Soto made requests for sexual favors and would hint that if Ms. Santana were to socialize with him, he would reward her with sales leads. (DE 80-1:2, 4-9). Ms. Santana recognized that women who appeared to be involved in an inappropriate relationship with Mr. Soto were treated with favoritism. (DE 80-1:4-5).

Conversely, Mr. Soto reassigned Ms. Santana's accounts when she rejected his advances or reacted negatively to his harassing behavior. (DE 80-1:7). He further refused to adjust her budget accordingly, forcing her to work harder than others to

earn her full compensation. (DE 80-1:7). To punish Ms. Santana's refusals, Mr. Soto purposefully neglected her clients when she was on leave, severely damaging her earning capacity. (DE 80-1:7-8). When Ms. Santana complained about his behavior, Mr. Soto increased his actions to prove that he could act with impunity. (DE 80-1:9-10). As a result, Ms. Santana felt anxious and uncomfortable being around him, endured daily harassment and a sexually hostile working environment, and would have to submit to his advances to obtain equal treatment to her counterparts. (DE 80-1:10, 14).

In 2018, Defendants hired Luis Roldan as the general manager of the station. (DE 80-1:10). All employees, including Ms. Santana and Mr. Soto, answered to him. (DE 80-1:10). Mr. Roldan contributed to the sexual harassment and hostile workplace environment. (DE 80-1:10-12, 14). Mr. Roldan regularly made sexually suggestive comments, even advising that the women in the office should wear more revealing clothing and would comment and rate them in a sexual manner. (DE 80-1:10-12). Mr. Roldan favored office workers that flirted and socialized with him outside of office hours and gave them demonstratable benefits ("perks"). (DE 80-1:10-12, 14). Additionally, Mr. Roldan engaged in an affair with one of his employees and provided her perks and additional benefits. (DE 80-1:10-12, 14).

Conversely, Ms. Santana, who did not engage in flirting and sexual favors with Mr. Roldan, was punished in various ways, such as his refusal to acknowledge

her in meetings and around the office in front of the other workers - who he even advised not to speak with her. (DE 80-1:10-12, 14). As a result of Mr. Roldan's actions and behaviors, Ms. Santana was constantly uncomfortable and felt that working with Mr. Roldan required accepting the condition that she would never be able to advance or obtain the benefits other workers enjoyed unless she were to engage in inappropriate behaviors with him. (DE 80-1:10-12, 14).

Following the Acquisition, Defendants provided Ms. Santana access to their antiharassment policy. (DE 80-4:149, 152). Ms. Santana, however, feared reporting these instances to Defendants' human resources department for fear of retaliation and because they historically disclosed confidential communications made by other reporting employees. (DE 80-1:12-14). In fact, Mr. Roldan explicitly informed Ms. Santana that any complaint against a person he liked would be brought to that same person's attention. (DE 80-1:13-14).

Ms. Santana's fears were well founded. Following her complaint, Ms. Santana's complaint and the investigation were openly discussed around the office despite Defendants' policy assuring discretion and anonymity. (DE 80-4:53-55, 126-128). Manuel Martinez (president of Telemundo), Arturo Fernandez (its senior counsel, and Leslie Sierra (Human Resources Manager) all had discussions regarding the investigation with Mr. Roldan prior to his interview, and there was even a question as to whether Mr. Roldan had been coached as to what to say. (DE

80-4:53-55, 126-128, 197, 205). Mr. Soto and Mr. Roldan took further actions against her making employment with Defendants more difficult. (DE 80-1:14-15).

In October of 2018, Ms. Santana went on short term disability ("STD") due to an automobile accident, during which time STD paid 100% of her salary. (DE 80-1:15; DE 80-3:130, 134). Mr. Soto was tasked with attending to Ms. Santana's clients and accounts during her first medical leave. (DE 80-1:8). Mr. Soto continued his pattern of harassment and discrimination against Ms. Santana for refusing to submit to his advances by neglecting her clients such that they would reach out directly to her during her convalescence. (DE 80-1:8). Notwithstanding that she was on leave and in pain, Mr. Soto required her to work, even to the point of demanding she "go to bed and take your laptop and spread your legs like you know how to do." (DE 80-1:7). Mr. Soto's purposeful neglect of Ms. Santana's accounts damaged her earning capacity. (DE 80-1:15). On December 3, 2018, Ms. Santana reported Mr. Soto's neglect of her clients during her medical leave to Mr. Roldan and Ms. Sierra. (DE 80-1:8).

Previously, Defendants allowed Ms. Santana reasonable accommodations when requested or necessary, including working from home. (DE 80-1:15). In April of 2019, Ms. Santana requested to return to work with that same accommodation, which Defendants refused to allow even after being provided with a return to work permission statement from her doctor. (DE 80-1:15; DE 80-6; DE 80-7).

9

Defendants' refusal to allow Ms. Santana to return to work forced her to remain on STD for another two months as opposed to working for her regular pay, and she had nearly exhausted her STD benefits by the time she was allowed to return to work in June of 2019. (DE 80-1:9, 15; DE 80-7).

On April 11, 2019, realizing that Defendants would not correct the issues regarding Mr. Soto's behavior, Ms. Santana sent a letter to Defendants' legal department, who had addressed the prior complaint, describing the sexual harassment Mr. Soto and Mr. Roldan subjected her to. (DE 80-4:17-18, 197-199). Defendants assigned Patti Lewis, an employee of Defendant NBC, to perform a cursory "investigation." (DE 80-4:18).

Ms. Lewis conducted a series of interviews, but failed to ask questions or follow up on many of the issues complained about, even when she admitted the responses may have changed her determination. For example, several other employees corroborated Ms. Santana's claims regarding the favoritism and inappropriate social interactions of Mr. Roldan and Heidi Rodriguez. (DE 80-4: 61-63, 117-118, 122-123, 126, 131-133). Ms. Lewis failed to ask either of them about the interactions and events, or even whether they were work-related, although she admitted that if the meetings were not work-related, they would be inappropriate and such answers could have changed her final determinations. (DE 80-4:61-63, 65-66, 109, 117-121, 131-133). Ms. Lewis did not ask Eduardo Echinique or Valeska Gil

about Mr. Roldan at all. (DE 80-4:107, 114-115). Nor did she inquire whether there were prior complaints against Mr. Roldan. (DE 80-4:42).

Ms. Lewis apparently found Ms. Santana to be credible regarding Mr. Soto, and stated she "ha[d] no reason not to believe her". (DE 80-4:38). Ms. Lewis agreed that the actions of Mr. Soto as described to her violated Defendants' sexual harassment policies. (DE 80-4:38-39). Ms. Lewis also apparently accepted as true, without any verification, anything that Mr. Soto said. For example, Ms. Lewis determined that Mr. Soto had adequately serviced Ms. Santana's accounts without any investigation, such as reviewing pertinent emails and texts which she agreed may have changed her determinations. (DE 80-4:83-84 88-90). Mr. Soto did not provide Ms. Lewis the emails she asked for regarding Ms. Santana's accounts. (DE 80-4:88-89). Ms. Lewis simply took Mr. Soto's word that he had adequately serviced the accounts, and his unsupported representation that he had emails showing it. (DE 80-4:89-90).

Ms. Lewis' investigation had too many inconsistencies to appropriately describe here, from changing statements by Ms. Santana and others so as to make the interviews meaningless (DE 80:4-85-87), to interpreting other employees' statements on disturbing or "alarming" behavior as "she believed that they spent more time together than they - than was necessary." (DE 80:4-122-123). Notably, Ms. Lewis never requested a follow-up interview with Ms. Santana. (DE 80-4:139).

Ms. Lewis clearly demonstrated her bias in favor of her employer when she testified that an action could only be considered a violation of Defendants' policies if it was corroborated, meaning "it has been witnessed by others or observed". (DE 80-4:151). In other words, according to Ms. Lewis, there could be no sexual harassment unless it occurred in front of others. (DE 80-4:150)("It's a violation if you become aware of it, and you look into it, and it's been corroborated"). Despite multiple descriptions of similar incidences provided by Ms. Santana's coworkers, Ms. Lewis found that her claims were uncorroborated because no one employee described the exact instances that Ms. Santana had. (DE 80-4:81-82, 95, 100, 105, 108, 116, 117-118, 122, 126, 131-133, 140, 200-204).

As such, Ms. Lewis' "investigation" unsurprisingly concluded in Defendants' favor. (DE 80-4:137). Notwithstanding Ms. Lewis' conclusion that "that there was opportunity for more respect-in-the-workplace training and maybe a different position for Mr. Soto," Defendants took no action whatsoever. (DE 80-4:137-138).

In October of 2019, Ms. Santana required a second leave of absence for additional surgeries. (DE 80-3:44, 152). As her STD was quickly exhausted, she had to seek long term disability benefits ("LTD"), which paid only 60% of her compensation package, losing 40% of her pay for approximately eight weeks. (DE 80-1:15). Ms. Santana applied for social security benefits as required by Defendants' LTD policy. (DE 80-3:157-158:14, 249, 255).

12

Contrary to Defendants' later misrepresentation that Ms. Santana "certified .

. . that she could no longer work and was unable to perform her job duties" (DE

67:25), the application only asks whether, as of that date, "[a]re you still unable to

work because of your illness, injuries, or conditions?" (DE 80-3:252, at ¶ 21). At no

time did Ms. Santana state she would never be able to continue to work. In fact, her

leave was for surgical procedures designed to relieve the pain and disability she had

described. (DE 80-1:15; DE 80-3:114, 160, 219). Had Defendants permitted her

reasonable accommodations, perhaps she would have been able to work.

### b.  The district court erroneously dismisses Ms. Santana's claims for retaliation, for failure to allege a causal connection.

Ms. Santana filed suit, eventually filing the Amended Complaint alleging four

counts of sexual discrimination and retaliation as recounted above. (DE 31).

Defendants later sought dismissal of the retaliation counts of the Amended

Complaint, arguing those Counts failed to include sufficient facts to establish a

causal connection to support the retaliation claims. (DE 35:1).

On August 5, 2021, the district court entered its Order on Defendants' Motion

To Dismiss. (DE 40). The district court found that Ms. Santana had provided only

conclusory allegations to support a causal connection regarding her claims of

retaliation. (DE 40:4). Specifically, the district court found that Ms. Santana had

failed to provide particulars such as:

13

> . . . who was responsible for delaying her return to work or when the requests for documentation were made; who made negative comments regarding her dedication to her job, what knowledge that individual had regarding her protected activities, or when such comments were made; what "superiors" instructed other employees to treat her poorly or what knowledge those persons had; what knowledge regarding her protected activity Roldan had or when his purported conduct took place; who was responsible for replacing Plaintiff's access card and what knowledge regarding her protected activity that individual possessed; and finally, who was responsible for adjusting Plaintiff's performance statistics, when that action was taken, or what that person or persons knew regarding her protected activity.

(DE 40:5).

The district court also found the temporal proximity, without more, insufficient to establish a causal connection. (DE 40:5). The court granted dismissal of Ms. Santana's claims for retaliation based on its finding of a failure to allege a causal connection between adverse employment action and protected activity. (DE 40:6).

### c. The district court erroneously grants summary judgment against Ms. Santana on her claims for sexual harassment.

Defendants later filed a Motion For Summary Judgment asking for entry of summary judgment on Plaintiff's remaining claims of sexual harassment. (DE 67). Ms. Santana filed a Response To Defendant's Motion For Summary Judgment. (DE 80). The district court granted Defendant's Motion For Summary Judgment. (DE 172).

14

The district court found that Ms. Santana failed to present evidence from which a reasonable juror could find that the alleged conduct was sufficiently severe or pervasive enough to alter the terms or condition of Ms. Santana's employment. (DE 172:14). The district court found that Ms. Santana failed to demonstrate that the incidents were sufficiently threatening or humiliating. (DE 172:15). The district court further found that Ms. Santana failed to point the court to evidence that the conduct interfered with her ability to perform her job. (DE 172:16). The district court also found that the individuals engaging in the conduct were not supervisors for purposes of Title VII. (DE 172:17). The district court also found that Ms. Santana failed to demonstrate that the Defendants had actual or constructive notice of the sexual harassment and failed to take action. (DE 172:18).

Ms. Santana filed a Rule 59 Motion To Alter Or Amend Judgment. (DE 177). In it, Ms. Santana maintained that she had alleged sufficient detail of causal connection regarding her retaliation claims in her Amended Complaint. (DE 177:5). Ms. Santana also argued that summary judgment was inappropriate because she sufficiently alleged severe or pervasive conduct for a jury to find that she established a hostile environment claim. (DE 177:8). Ms. Santana attached the affidavits of two additional former employees of Defendants who came forward with information that further shows how severe and pervasive the sexual harassment was. (DE 177-1; 177-2). The former employees were previously unavailable because they were subject to

15

agreements containing confidentiality provisions and non-disparagement clauses that prevented them from discussing the matter for fear of repercussions. (DE 177-1; 177-2).

The district court denied Ms. Santana's Rule 59 Motion To Alter Or Amend Judgment. (DE 181). This appeal followed.

### iii. Statement of the Standard of Review.

As to Issue I, this Court reviews the district court's grant of a motion to dismiss for failure to state a claim de novo. *Chaparro v. Carnival Corp*., 693 F.3d 1333, 1335 (11th Cir. 2012) ("We review *de novo* the district court's grant of a *Rule 12(b)(6)* motion to dismiss for failure to state a claim, accepting the complaint's allegations as true and construing them in the light most favorable to the plaintiff.") (quoting *Cinotto v. Delta Air Lines Inc.*, 674 F.3d 1285, 1291 (11th Cir. 2012)).

As to Issue II, "[a] district court's order granting summary judgment is reviewed de novo." *Broadcast Music, Inc. v. Evie's Tavern Ellenton, Inc*., 772 F. 3d 1254, 1257 (11th Cir. 2014). "In undertaking such a review, the court 'view[s] the record and draw[s] all reasonable inferences in the light most favorable to the nonmoving party.'" *Broadcast Music, Inc.*, 772 F.3d at 1257 (*quoting Johnson v. Governor of Fla.,* 405 F.3d 1214, 1217 (11th Cir. 2005)).

As to Issue III, this Court generally reviews the district court order denying a Rule 59 motion for an abuse of discretion. *Arthur v. King*, 500 F. 3d 1335, 1343

(11th Cir. 2007). However, if the ruling turns on a question of law, the Court reviews the question of law de novo. *St. Louis Condominium Ass'n, Inc. v. Rockhill Ins. Co.*, 5 F. 4th 1235, 1242 (11th Cir. 2021).

## <u>SUMMARY OF ARGUMENT</u>

**I**.    The district court erred in dismissing Ms. Santana's claims for retaliation where she clearly alleged a causal connection between the adverse employment action and her protected activity. Rule 8(a)(2) requires only that a pleading contain a "short and plain statement of the claim" showing that the pleader is entitled to relief.

It was clear from the Amended Complaint that Ms. Santana's superiors were Mr. Soto and Mr. Roldan. Ms. Santana alleged sufficient specificity regarding the causal connection between the protected activity and the adverse employment decision. Ms. Santana alleged that she made Telemundo and NBC Universal aware of the discrimination by letter on April 11, 2019, that Mr. Soto and Mr. Roldan were aware of the protected activity and openly discussed the ensuing investigation in the office, and that the adjustment of her performance statistics to reduce her compensation came about following her reporting. The district court's finding that Ms. Santana had to allege more specifically "what knowledge" the two men had is not the appropriate standard and held her to an unreasonably high burden.

**II**.    The district court erred in granting summary judgment for Defendants

17

on Ms. Santana's remaining sexual harrassment claims. A reasonable jury could find that Ms. Santana was subjected to a hostile work environment. Whether a workplace environment is hostile or abusive can be determined only by looking at all the circumstances. The conduct at issue here was severe and pervasive. Ms. Santana was subjected to sexually inappropriate stories, comments, propositions, and physical interactions on a near daily basis. The conduct included physical touching. The district court erred in characterizing post-complaint conduct as mere retaliation and failing to consider it as harassment.

Additionally, the court erred where Mr. Soto and Mr. Roldan were supervisors for Title VII because each had the authority to make decisions causing a significant change in Ms. Santana's benefits. Even if Mr. Soto and Mr. Roldan were coworkers, as Ms. Santana's claims would still proceed on negligence. Defendants had a duty to prevent, deter, and remedy sexual harassment and discrimination, and breached that duty as Defendants had explicit notice of the violative behaviors and failed to remedy them.

Defendants could not successfully raise the *Ellerth/Faragher* defense. There was summary judgment evidence that Defendants did not exercise reasonable care to prevent, remedy, and deter sexual harassment. Merely having a policy and procedures regarding sexual harassment is insufficient unless Defendants exercised reasonable care to investigate and correct the harassment. There existed genuine

18

issues of material fact as to the reasonableness of the Defendant's corrective actions. Ms. Lewis, who conducted an investigation, was an employee of Defendants and not a neutral party. She unreasonably performed only the most perfunctory investigation, failing to investigate matters brought to her attention that she agreed would have changed her determinations. She also would not make a finding of harassment unless another person both saw it and reported an incident.

Summary judgment for Defendants on the second prong of the *Ellerth/Faragher* defense was also erroneous. Ms. Santana's actions were wholly reasonable, as she held a credible fear based on her observations that any complaint would fall on deaf ears and result in severe repercussions. Despite Defendants' dissemination of a written policy, Ms. Santana witnessed those charged with enforcing it either turn a blind eye or blatantly violate it. Ms. Santana was also receiving a barrage of news reports demonstrating that the policy was nothing more than lip service.

**III.**     The district court erred in denying Ms. Santana's Rule 59 Motion To Alter Or Amend Judgment. Additional witnesses came forward that would not come forward previously, with assertions relevant to the severity and pervasiveness of the harassment. Ms. Santana met her burden to show that the witnesses were unavailable where they were previously subject to confidentiality provisions and non-disparagement clauses preventing them from discussing the matter for fear of legal

repercussions. The district court failed to address the new material and whether the witnesses were available.

The district court also committed a manifest error of law by applying the incorrect standard in dismissing Ms. Santana's retaliation claims. As explained in Issue I, the district court erroneously required that Ms. Santana specifically allege what knowledge Mr. Soto and Mr. Roldan had regarding her protected activity. This error resulted from the misapplication of settled law and precedent.

This Court should reverse.

## **ARGUMENT**

I.  **The district court erred in dismissing Ms. Santana's claims for retaliation where she clearly alleged a causal connection between the adverse employment action and her protected activity.**

### A. Rule 8(a)(2) does not require the level of detail to which the district court held Ms. Santana's Amended Complaint.

Federal Rule of Civil Procedure 8(a)(2) requires only that a pleading contain a "short and plain statement of the claim" showing that the pleader is entitled to relief. "To survive  a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[T]o state a plausible claim for relief, the plaintiff[] must plead 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1268 (11th Cir. 2009) (alteration added) (*quoting Iqbal*, 556 U.S. at 678). Rule 8(a)(2) requires only that the statement "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp.*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41 (1957)).

The purpose of a 12(b)(6) motion "is to test the facial sufficiency of the complaint." *Omar v. Lindsey*, 334 F.3d 1246, 1247 (11th Cir. 2003). When reviewing a motion to dismiss, all of the factual allegations are taken as true.

Moreover, "the plaintiff's factual allegations, when assumed to be true, 'must be enough to raise a right to relief above the speculative level". *Mills v. Foremost Insurance Company*, 511 F.3d 1300, 1303 (11th Cir. 2008) (quoting *Bell Atl. Corp*., 550 U.S. at 555). Consequently, "'[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" *Id*.

### B. Ms. Santana clearly alleged awareness of the protected activity by her supervisors, and the causal connection between the protected activity and the adverse employment decision.

To state a claim for retaliation, Ms. Santana was required to allege "(1) that [s]he engaged in protected activity under Title VII, (2) that [s]he suffered an adverse employment action, and (3) a causal connection between the protected activity and the adverse employment decision." *Greene v. Ala. Dep't of Revenue*, 746 Fed. Appx. 929, 931 (11th Cir. 2018). "To establish a causal connection, a plaintiff must show that the decision-makers were aware of the protected conduct, and that the protected activity and the adverse actions were not wholly unrelated." *Shannon v. BellSouth Telecomms., Inc.*, 292 F.3d 712, 716 (11th Cir. 2002).

Ms. Santana's Amended Complaint sufficiently alleges the elements for

retaliation. Ms. Santana already alleged that Mr. Soto was her manager and her superior, and also that Mr. Roldan was her superior. (DE 31, at ¶¶ 20-21, 30). It was clear from the Amended Complaint that Ms. Santana's superiors were Mr. Soto and Mr. Roldan. The district court's finding that Ms. Santana failed to allege sufficient details as to her "superiors" in the context of the retaliation she suffered is erroneous. (DE 40:4-5).

Ms. Santana also alleged sufficient specificity regarding the causal connection between the protected activity and the adverse employment decision. Ms. Santana alleged that she made Telemundo and NBC Universal aware of the discrimination by letter on April 11, 2019. (DE 31, at ¶ 58). She further alleged awareness of the protected activity by her supervisors Mr. Soto and Mr. Roldan, who openly discussed the ensuing investigation in the office despite the Defendants' purported policy of assuring discretion and anonymity of such investigations. (DE 31, at ¶ 64). Ms. Santana alleged that the adjustment of her performance statistics to reduce her compensation came about following her reporting. (DE 31, at ¶ 83, 86).

It is sufficient that Ms. Santana alleged that Mr. Soto and Mr. Roldan were aware of the investigation after she made Telemundo and NBC Universal aware. The district court's finding that Ms. Santana had to allege more specifically "what knowledge" the two men had is simply not the appropriate standard. The district court appears to have held Ms. Santana to a heightened pleadings standard more

23

similar to that required by Rule 9 for pleading fraud or mistake. Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake"). Such a requirement would hold plaintiffs to an unreasonably high and often impossible burden. Similarly, Ms. Santana could not reasonably be expected know which of Defendants' employees was responsible for replacing Plaintiff's access card.

*Greene v. Ala. Dep't of Revenue*, which the district court cited in the Order, is distinguishable. In *Greene*, the plaintiff sued his former employers at the Alabama Department of Revenue and Alabama Department of Public Health for employment retaliation in violation of Title VII after he was terminated from his employment. 746 Fed. Appx. at 930. Greene's complaint generically alleged that "the ADR knew of his EEOC charges either because that information 'was provided [to the ADR] by the ADPH, or, alternatively, was gained by the ADR through its own inquiry.'" *Id.* at 932. Greene provided no specific facts as to who at either agency was aware of his EEOC complaint, when they learned of it, and no causal connection could be inferred based upon the timing of the protected activity and the adverse act. *Id*.

The district court dismissed Greene's complaint for failure to state a claim. *Id.* at 931. The Eleventh Circuit affirmed, concluding that Greene failed to allege facts demonstrating plausibly a causal connection where he did not allege sufficiently specific facts as to who knew about his EEOC complaint and how or

when decisionmakers at his employer learned of his protected activities. *Id*. at 932. The Eleventh Circuit found that Greene's "naked assertions" that the ADR knew of his EEOC charge, or was influenced by the ADPH to terminate his employment, was too speculative to state a plausible claim. *Id*.

In contrast, here Ms. Santana alleged in the Amended Complaint that, following her letters to Telemundo and NBC Universal on April 11, 2019, Mr. Soto and Mr. Roldan were aware of her protected activity and openly discussed the ensuing investigation in the office. Unlike the plaintiff in *Greene*, she was not assuming awareness by the Defendants or by Mr. Soto and Mr. Roldan. The district court in granting dismissal of Ms. Santana's retaliation claims found that she failed to allege a causal connection. However, the district court held the Amended Complaint to an erroneous and unreasonably high standard for details. Ms. Santana was not required to make *detailed* factual allegations in the Amended Complaint. *Mills*, 511 F.3d at 1303. The allegations of the Amended Complaint raised Ms. Santana's right to relief beyond a speculative level.

## II. The district court erred in granting summary judgment for Defendants on Ms. Santana's remaining sexual harrassment claims.

### A. Summary Judgment Standard.

Summary judgment is appropriate "if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (citation omitted). The court may enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The moving party must "show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). If the movant does so, then "the burden shift[s] to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark*, 929 F.2d at 608.

A genuine factual dispute exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1358 (11th Cir. 1999). The opposing party must proffer more than "a mere scintilla of evidence" to show "that the jury could reasonably find for that party." *Abbes v. Embraer Servs., Inc.*, 195 F. App'x 898, 899-900 (11th Cir. 2006) (internal quotations omitted). When deciding whether summary judgment is appropriate, the court views all facts and resolves all doubts in favor of the

26

nonmoving party. *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1247 (11th Cir. 2013).

### B. Ms. Santana alleged severe or pervasive conduct sufficient for a jury to find that she established a hostile environment claim.

"Hostile environment claims are different in kind from discreet acts. Their very nature involves repeated conduct." *AMTRAK v. Morgan,* 536 U.S. 101, 115-117. "A hostile work environment claim is comprised of a series of separate acts that collectively constitute one 'unlawful employment practice.'" *Morgan*, 536 U.S. at 117. In evaluating a claim for a hostile work environment, courts must consider the totality of the circumstances. *Id.* at 116. This analysis includes consideration of any prior related incidents as well as any further actions. *Id.* at 117 ("Subsequent events, however, may still be part of the one hostile work environment claim"). As explained by the Supreme Court, although one act must fall within the statutory period, a district court must consider all the incidents as a whole. *Id.*

Here, a reasonable jury could find that Ms. Santana was subjected to a hostile work environment created by her employers, thereby rendering summary judgment improper. *See Ward v. Casual Rest. Concepts, Inc.,* 2012 U.S. Dist. LEXIS 26659, 2012 WL 695846, at *10-12 (M.D. Fla. Mar. 1, 2012) (denying summary judgment even when court believes it is a "close call"). "[T]he real social impact of workplace behavior often depends on a constellation of surrounding circumstances,

expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed." *Reeves v. C.H. Robinson Worldwide, Inc.,* 594 F.3d 798, 810 (11th Cir. 2010) (quoting *Oncale v. Sundowner Offshore Servs.,* 523 U.S. 75, 81-82 (1998)). Although Defendants argued to the district court that proving such harassment is a "high threshold," the actual standard for summary judgment is whether "a jury reasonably could find that it was a workplace that exposed [Ms. Santana] to disadvantageous terms or conditions of employment to which members of the other sex were not exposed." *Reeves.,* 594 F.3d at 813.

The Supreme Court has said that whether a workplace environment is hostile or abusive "can be determined only by looking at all the circumstances." *Harris v. Forklift Sys.,* 510 U.S. 17, 23 (1993). The Supreme Court identified four relevant factors to such determination of whether a workplace environment is hostile or abusive: 1) the frequency of the conduct; 2) its severity; 3) whether it is physically threatening or humiliating; and 4) whether it unreasonably interferes with one's job performance. *Harris*, 510 U.S. at 23. No single factor, however, is required. *Id.*

Unlike the limited actions described in *Mendoza v. Borden, Inc.,* 195 F.3d 1238, 1247 (11th Cir. 1999), Ms. Santana was subjected to sexually inappropriate stories, comments, propositions, and physical interactions on a near daily basis. (DE 80-1:10-12). Although couched as "jokes," the sexually discriminatory language used was, without a doubt, derogatory, inappropriate, and offensive, not merely

uncivil. (DE 80-1:2-16). Moreover, as admitted by Defendants, male employees were not subjected to similar language or scrutiny. (DE 80-2:43-45). Ms. Santana regularly felt humiliated, anxious, and distracted as a result of the hostile work environment. (DE 80-1:7-12).

Additional former employees of Defendants later came forward with information that further shows how severe and pervasive the sexual harassment was. (DE 177-1; DE 177-2). Ms. Santana attached their affidavits to her Rule 59 Motion. (DE 177-1; DE 177-2). Consideration of the affidavits from these witnesses establishes that the conduct was pervasive.

Additionally, the district court erred in characterizing post-complaint conduct as mere retaliation and failing to consider it as harassment. Ms. Santana stated in her Affidavit that Mr. Soto continued to harass her upon her return to work. (DE 80-1:8). His actions included repeated physical contact. (DE 80-1:9). The district court stated that it would not consider the post-complaint incidents in Ms. Santana's Affidavit because they "were allegedly motivated by retaliation rather than sex." (DE 172:16). However, Ms. Santana's Affidavit details that Mr. Soto continued to harass her. Her speculation that he made repeated physical contact after her complaint in order to communicate that he could "get away with it", even if true – does not relegate his conduct to retaliation rather than sexual harassment.

29

Not only did these actions constitute a significant change in employment status because of the emotional and financial effects, but also because Ms. Santana was forced to accept these humiliating conditions as a non-negotiable term of her continued employment. *See Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 761 (1998). Considering the evidence in the light most favorable to Ms. Santana, a jury could reasonably find the persistent and offensive conduct created a hostile working environment. *Reeves,* 594 F.3d at 811-12. The Court's finding that Ms. Santana failed to demonstrate that the conduct was severe or pervasive is erroneous.

### C. Mr. Soto and Mr. Roldan were supervisors for Title VII purposes, and even if not, Defendants are liable for negligence.

Mr. Soto and Mr. Roldan were Ms. Santana's supervisors under Title VII. "An employee is a 'supervisor' for purposes of vicarious liability under Title VII if he or she is empowered by the employer to take tangible employment actions against the victim." *Vance v. Ball State Univ.,* 570 U.S. 421, 427 (2013). The Supreme Court in *Vance* described "tangible employment actions against the victim" as the ability "to effect a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits," including "the authority to take what *Ellerth* and *Faragher* referred to as a 'tangible employment action.'" 570 U.S. at 431-33.

Here, Mr. Soto and Mr. Roldan each had the authority to make decisions causing a significant change in Ms. Santana's benefits. This included re-assigning her accounts and adjusting her budget such that her financial renumeration changed significantly (DE 80-2:17-19, 23-25), take or recommend disciplinary action against her for refusing to acquiesce to their inappropriate behavior, and provide preferential treatment to other female coworkers who agreed to meet with them socially. (DE 80-1:2,4-5,7,10-16; DE 80-4:133-134). Mr. Soto testified that he had the ability to direct which of the sale representatives or account executives would handle which accounts, "with <u>input</u> from [the] general manager", not permission. (DE 80-2:20) (emphasis added). As to Mr. Roldan, the notion that the <u>general manager</u> of the station was not Ms. Santana's supervisor defies common sense.

Mr. Soto and Mr. Roldan are supervisors under Title VII as a matter of law as set forth in *Vance.* Even if they did not meet the exact *Vance* definition, a trier of fact could determine that they qualify as such. Notwithstanding, summary judgment was inappropriate even if Mr. Soto and Mr. Roldan were coworkers, as Ms. Santana's claims would still proceed on the negligence of Defendants. As discussed above, Defendants had a duty to prevent, deter, and remedy sexual harassment and discrimination, and breached that duty as Defendants had explicit notice of the violative behaviors and failed to remedy them. *See Vance,* 570 U.S. at 427

("employer was negligent, *i.e.,* if the employer knew or reasonably should have known about the harassment but failed to take remedial action").

The district court's conclusion as to Defendants' notice and Ms. Santana's reporting is incorrect under the evidence presented. Ms. Santana did provide Defendants actual notice in April of 2019. The mere fact of a delay in reporting does not absolve Defendants, especially where they conducted an investigation and incorrectly determined that Defendants had nothing to correct besides possibly more respect-in-the-workplace training and a different position for Mr. Soto based on his managerial skills. (DE 80-4:137-138). The district court's finding that "there is no evidence that Plaintiff notified Defendants of conduct that occurred after she returned to work in June 2019" (DE 172:18) is inapposite as by that time Defendants had already been notified of the harassment, had conducted their "investigation", and had apparently decided to take no action.

### D. Defendants could not successfully raise the *Ellerth/Faragher* defense.

In order to raise the *Ellerth/Faragher* Defense, "an employer must prove that: (1) the employer exercised reasonable care to prevent and ***promptly correct*** the sexual harassment; ***and*** (2) the employee unreasonably failed to take advantage of any protective or corrective opportunities offered by the employer, or otherwise failed to avoid harm." *Speaks v. City of Lakeland*, 315 F. Supp. 2d 1217, 1227 (M.D.

Fla. 2004) (citing *Faragher*, 524 U.S. at 807). The defendant "bears the burden of proof with respect to each element of the *Ellerth/Faragher* affirmative defense." *Kurtts v. Chiropractic Strategies Group, Inc.,* 481 Fed. Appx. 462, 467 (11th Cir. 2012).

Here, there was evidence on summary judgment that Defendants did not exercise reasonable care to prevent, remedy, and deter sexual harassment. Merely having a policy and procedures regarding sexual harassment is insufficient unless Defendants exercised reasonable care to investigate and correct the harassment. *See Ward,* 2012 U.S. Dist. LEXIS 26659, 2012 WL 69584, at *15-17. First, an employer must conduct a reasonable investigation, and then "remedial measures are deemed reasonable when they 'stop the harassment, correct its effects on the employee, and ensure that the harassment does not recur.'" *Id.* at *16-17.

In *Ward,* the plaintiff sued for hostile-environment sexual harassment under Title VII and the Florida Civil Rights Act. *Id.* at *7. The employer argued that the plaintiff was precluded from recovering on her claims by the *Ellerth/Faragher* defense. *Id*. at 13. The employer cited its maintenance of an anti-sexual harassment policy and the steps it took to correct the harassment. *Id*. at *15. Those steps included "taking immediate steps to ensure that Harrington and Ward did not work together during the investigation, . . .issuing Harrington a written reprimand, removing Harrington from the promotion list for six months, and transferring Harrington to a

different Applebee's location." *Id.* at *16. The plaintiff argued the defendant failed to take reasonable corrective action, including failing to conduct a meaningful investigation based on a number of flaws. *Id*. The district court denied summary judgment, finding a genuine issue of material fact as to the reasonableness of the defendant's corrective actions. *Id*.

Similarly, in the instant case there existed genuine issue of material fact as to the reasonableness of the Defendant's corrective actions. Ms. Lewis was an employee of Defendants, and not a "neutral party" as suggested by Defendants. She unreasonably performed only the most perfunctory investigation, in which she failed to investigate matters brought before her that she agreed would have changed her determinations. She testified that she would not make a finding of harassment unless there was another person who both saw it and reported it (despite the general knowledge that any sort of report could lead to retaliation).

Defendants failed to take corrective action, failing to even prevent discussion of the investigation around the office, much less take any steps to prevent Mr. Soto and Mr. Roldan from further harassment of Ms. Santana, even during the investigation. *See Swindle v. Jefferson Cty. Comm'n,* 593 F. Appx. 919, 924 (11th Cir. 2014) (finding proper investigation took place where offenders placed on administrative leave, investigators performed multiple polygraphs and issued numerous reports, and offenders then terminated). Further, Defendants failed to even

comply with Ms. Lewis' tepid recommendation regarding "opportunities" for further training, and took no actions that would give any credence to a claim that its procedures would be safe or effective for any other employee. Defendants cannot claim that they took reasonable care to prevent or correct any sexual harassment. *See Ward*, at *15-17.

Summary judgment for Defendants on the second prong of the *Ellerth/Faragher* defense was also erroneous. Ms. Santana's actions were wholly reasonable, despite Defendants' assertion that she failed to take advantage of corrective opportunities because she did not follow the strict constructs set forth in the Employee Handbook. *Swindle,* 593 F. Appx. at 924. As explained in *Frederick v. Sprint/United Mgmt.* Co., 246 F.3d 1305, 1316 (11th Cir. 2001), summary judgment is improper if there is a factual dispute regarding whether there were extenuating circumstances that explain failure to comply with a reporting policy.

Here, Ms. Santana's interpretation of the terms of the policy required her to report her claims directly to human resources, her supervisor, or senior management. (DE 80-1:13, at ¶ 22). While a generalized fear of retaliation is insufficient to excuse a delay in reporting, Ms. Santana held a credible fear based on her observations that any complaint would fall on deaf ears and result in severe repercussions. (DE 80-1:13-14); *Walton v. Johnson & Johnson Servs.,* 347 F.3d 1272, 1290-91 (11th Cir. 2003). Moreover, it was only those actions during her leave of absence that allowed

Ms. Santana to recognize the full ramifications of the continuing discrimination, and same was timely reported. *See Sumpter v. Mukasey,* 2009 WL 10664977, 2009 U.S. Dist. LEXIS 138142, at *29 (N.D. Ga. Feb. 23, 2009) (finding that notice given months after an alleged incident, when the harassment continued, precluded summary judgment).

Despite dissemination of a written policy, an employee cannot be found to have unreasonably failed to follow it when "company practice indicates a tolerance towards harassment or discrimination." *Miller v. Kenworth of Dothan Inc.,* 277 F .3d 1269, 1280 (11th Cir. 2002). Here, despite dissemination of a written policy, Ms. Santana witnessed those charged with enforcing it either turn a blind eye (Ms. Sierra) or blatantly violate it (Mr. Soto and Mr. Roldan). Furthermore, Ms. Santana was receiving a barrage of news reports demonstrating that the policy was nothing more than lip service. (DE 80-1:13-14).

### E. Ms. Santana has demonstrable front pay and back pay damages, directly related to Defendants' discriminatory actions against her.

The district court did not reach the damages issue. (DE 172:21). Ms. Santana will address it in the interest of being thorough.

Ms. Santana has demonstrable front pay and back pay damages, directly related to Defendants' discriminatory actions against her. Ms. Santana is entitled to back pay and front pay, along with all other damages available under Title VII,

including compensatory damages, nominal damages, punitive damages, and attorneys' fees. *See* 42 U.S.C. § 2000e-5; 42 U.S.C. § 1981(a)(1); *Servillo v. Sola Medi Spa, Ltd. Liab. Co*., 2021 U.S. Dist. LEXIS 22165, 2021 WL 406177, at *6 (M.D. Fla. Feb. 5, 2021); *Stallworth v. Shuler*, 777 F.2d 1431, 1435 (11th Cir. 1985); *Ferrill v. Parker Group, Inc.*, 168 F.3d 468, 475-476 (11th Cir. 1999).

Defendants made the bald assertion that Ms. Santana is unable to work (as suggested by their misrepresentation regarding the standard social security application). That assertion is untrue, as Ms. Santana has always intended to return to work, and is entitled to either reinstatement (if appropriate) or front pay until retirement age. *See Warren v. Cty. Comm'n of Lawrence Cty.*, 826 F. Supp. 2d 1299, 1307 (N.D. Ala. 2011). Additionally, even if Defendants' assertion is true, it does not, in and of itself, prevent judgment in Ms. Santana's favor. *See Cush-Crawford v. Adchem Corp.*, 94 F. Supp. 2d 294, 296-297 (E.D.N.Y. 2000) (sustaining jury award and judgment in favor of plaintiff despite the fact that she left her employment with defendant after sustaining an unrelated on-the-job injury).

Further, Defendants did not allow Ms. Santana to return to work in April of 2019, forcing her to prematurely exhaust her disability benefits. Ms. Santana is entitled to back pay equal to the lost compensation during the time she was prevented by Defendants from returning to work, and will be entitled to additional pay for time Defendants have not allowed her to return to work through the date of judgment.

*Nord v. United States Steel Corp.*, 758 F.2d 1462, 1473 (11th Cir. 1985).

### III. The district court erred in denying Ms. Santana's Rule 59 Motion To Alter Or Amend Judgment.

#### A. The district court erred in denying Ms. Santana's Rule 59 Motion To Alter Or Amend Judgment where additional witnesses came forward that would not come forward previously.

Two additional former employees of Defendants, Eduardo Echinique and Trevor Frohne, later came forward with information that further shows how severe and pervasive the sexual harassment was. (DE 177-1; DE 177-2). Ms. Santana attached their affidavits to her Rule 59 Motion. (DE 177-1; DE 177-2). "In the summary judgment context, the movant [under rule 59(e)] must show that the new evidence was unavailable at the time that summary judgment was granted." *PBT Real Est., LLC v. Town of Palm Beach*, 988 F.3d 1274, 1286 (11th Cir. 2021).

Ms. Santana met her burden to show that Echinique and Frohne were unavailable. Specifically, the employees were unavailable prior to being served with trial subpoenas because they were previously subject to agreements containing confidentiality provisions and non-disparagement clauses that prevented them from discussing the matter for fear of legal repercussions. In compliance with the Case Management and Scheduling Order (DE 22) limiting the number of depositions available to each side, Ms. Santana sought the deposition of adverse witnesses during

the discovery period and only issued subpoenas for testimony at trial to "friendly" witnesses. Consideration of the Affidavits from these witnesses establishes that the conduct was pervasive.

The assertions of the witnesses are relevant to the issue of the severity and pervasiveness of the harassment. They also contradict the district court's conclusion that "[t]here was no witness to the touching or more serious comments". (DE 172:18). Mr. Echinique specifically stated that he overheard Mr. Soto say to Ms. Santana, "I'm going to have to move back. I'm getting a hard on", and that this made Ms. Santana very visibly upset. (DE 177-1:2). Ms. Santana also told Mr. Echinique about the incident in which Mr. Soto touched her leg while the two were in the car driving to Miami and suggested they book a single hotel room, although Mr. Echinique did not directly witness that incident. (DE 177-1:2). Mr. Echinique stated that the inappropriate comments by Mr. Soto regarding women were so common (almost daily) that he eventually tuned them out. (DE 177-1:2, 3). Mr. Frohne testified that the "offensive sexual remarks made by Mr. Soto and Mr. Roldan . . . in the workplace . . . were so commonplace, it is hard to recall most specific instances". (DE 177-21).

The district court failed to address the new material and whether the witnesses were available. In the order (DE 181) denying Ms. Santana's Rule 59 Motion to Alter or Amend Judgment, the district court merely stated that "such declarations

could have been discovered prior to entry of summary judgment." (DE 181). This fails to address that the witnesses were unavailable given the confidentiality provisions and non-disparagement clauses to which the witnesses were subject. The district court thus erred in denying the Rule 59 Motion to Alter or Amend Judgment.

### B. The district court erred in denying Ms. Santana's Rule 59 Motion To Alter Or Amend Judgment where the district court committed manifest error of law in applying the incorrect standard in dismissing Ms. Santana's retaliation claims.

"[We] have said that a district court may alter or amend a judgment that is based on 'manifest errors of law or fact.'" *Jenkins v. Anton*, 922 F.3d 1257, 1263 (11th Cir. 2019) (citing *Metlife Life & Annuity Co. of Conn. v. Akpele*, 886 F.3d 998, 1008 (11th Cir. 2018)). "A 'manifest error' is not demonstrated by the disappointment of the losing party. It is the 'wholesale disregard, misapplication, or failure to recognize controlling precedent.'" *Oto v. Metropolitan Life Ins. Co*., 224 F.3d 601, 606 (7th Cir. 2000) (quoting *Sedrak v. Callahan*, 987 F.Supp. 1063, 1069 (N.D.Ill.1997)).

Ms. Santana argued in her Rule 59 Motion to Alter or Amend Judgment that the district court applied an incorrect standard in dismissing her retaliation claims. Ms. Santana cited the applicable rule of procedure and precedent. Ms. Santana will not repeat that entire argument here, but refers to Issue I above. Ms. Santana argued that the district court erroneously required that she specifically allege what

knowledge Mr. Soto and Mr. Roldan had regarding her protected activity. (DE 177:7, 7-8) ("[T]he Court held the Amended Complaint to an erroneous and unreasonably high standard for details.").

The district court did not address this argument in its order (DE 181) denying Ms. Santana's Rule 59 Motion to Alter or Amend Judgment. The district court misapplied the applicable standard in dismissing Ms. Santana's retaliation claims. This error resulting from the misapplication of settled law and precedent constitutes a manifest error of law. The district court thus erred in denying the Rule 59 Motion.

## <u>CONCLUSION</u>

The Court should reverse the district court's Order on Defendant's Motion For Summary Judgment, subsequent Final Judgment, and Order denying the Rule 59 Motion, and remand for further proceedings for the reasons discussed above.

Respectfully submitted,

**Schwartz Sladkus Reich Greenberg Atlas LLP**
*Appellate Counsel for Appellant*
2424 N. Federal Highway, Suite 456
Boca Raton, FL 33431
Telephone: (561) 769-5600

By: */s/ Jonathan Mann*
Jonathan Mann, Esq.
Fla. Bar No. 28090
Primary: AppellatePleadings@ssrga.com
Secondary: rbresky@ssrga.com
jmann@ssrga.com

41

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(a)(7)(B), (C), undersigned counsel certifies that this brief complies with the Court's type-volume limitation. The brief is typed in proportionally-spaced Times New Roman 14-point font or larger, double- spaced, and, based upon the word processing counter of Word 2003 or 2007 including the text, footnotes, headings, and quotations using the formula stated in Fed. R. App. P. 32(a)(7)(B)(iii), the word count is **8,833.**


By:  /s/ *Jonathan Mann*
Jonathan Mann, Esq.
Florida Bar No. 28090


## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on January 25, 2023, this Brief of Appellant was electronically filed through the Eleventh Circuit Court of Appeals' ECF System, four (4) paper copies were mailed to Clerk of Court, U.S. Court of Appeals for the 11th Circuit, 56 Forsyth St., N.W., Atlanta, Georgia 30303 via UPS, and a copy was emailed to all counsel of record via the ECF System.

By:  /s/ *Jonathan Mann*
Jonathan Mann, Esq.
Florida Bar No. 28090